## **AFFIDAVIT OF TASK FORCE AGENT JOAO J. MONTEIRO**

Task Force Agent **JOAO J. MONTEIRO** deposes and states as follows:

### **A.   INTRODUCTION**

1.   I am a Task Force Agent with the Drug Enforcement Administration ("DEA") and I am currently assigned to DEA's New England Field Division, with its main office in Boston, Massachusetts. I am a police officer with the Boston Housing Authority Police Department and I have been so employed for approximately nine years; I currently hold the rank of Investigator/Police Officer. I have been deputized by DEA as a Task Force Agent, pursuant to Section 878 of Title 21, United States Code, and I have been assigned to DEA's office in Boston for approximately eight years. As a deputized Task Force Agent, I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516, Title 18, United States Code.

2.   During the course of my law enforcement career, I have written and/or participated in the execution of numerous search warrants. In a substantial number of residential searches executed in connection with the drug investigations in which I have been involved, the following kinds of drug-related evidence have typically been recovered: (a) controlled substances, such as

1

cocaine, crack cocaine, and heroin; (b) paraphernalia for packaging, processing, diluting, weighing, and distributing controlled substances, such as scales, rubber gloves, funnels, sifters, grinders, glass panes and mirrors, razor blades, plastic bags, heat-sealing devices, as well as cutting material to dilute the potency of the controlled substance; (c) books, records, receipts, notes, ledgers, and other papers relating to the distribution of controlled substances; (d) personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to individuals involved in the distribution of controlled substances; (e) cash, currency, and records relating to controlled substances income and expenditures of money and wealth, such as money orders, wire transfers, cashier's checks and receipts, bank statements, and checkbooks; (f) specially manufactured hidden compartments known as "hides" that are used to store drugs and drug proceeds and which are at time electronically controlled and operated; and (g) firearms and other dangerous weapons.

3.    In addition, during the course of such residential searches, I and other agents have also found items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the subject premises. Such identification evidence is typical of the articles people commonly maintain in their residences, such as canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements,

2

identification documents, and keys.

4.     Based upon my training and experience, as well as the
knowledge and experience of other agents and police officers in
my office, I am aware that it is generally a common practice for
drug traffickers to store their drug inventory and drug-related
paraphernalia (as described above) in their residences. Further,
it is generally a common practice for drug traffickers to
maintain in their residences records relating to their drug
trafficking activities. Because drug traffickers in many
instances will "front" (that is, sell on consignment) controlled
substances to their clients, or alternatively, will be "fronted"
controlled substances from their suppliers, such record-keeping
is necessary to keep track of amounts paid and owed, and such
records will also typically be maintained close at hand so as to
readily ascertain current balances. Often drug traffickers keep
"pay and owe" records to show balances due for drugs sold in the
past ("pay") and for payments expected ("owe") as to the
trafficker's supplier and the trafficker's dealer(s).
Additionally, drug traffickers must maintain telephone and
address listings of clients and suppliers and keep them
immediately available in order to conduct their drug trafficking
business efficiently.

5.     It is also a generally common practice for traffickers
to conceal at their residences large sums of money, either the
proceeds from drug sales or monies to be used to purchase
controlled substances. In this connection, drug traffickers

3

typically make use of wire transfers, cashier's checks, and money orders to pay for controlled substances. Evidence of such financial transactions and records relating to income and expenditures of money and wealth in connection with drug trafficking would also typically be maintained in residences.

6. Typically, drug traffickers possess firearms and other dangerous weapons to protect their profits, supply of drugs, and persons from others who might attempt to forcibly take the traffickers' profits and/or supply of drugs.

7. My awareness of these drug trafficking practices, as well as my knowledge of drug use and distribution techniques as set forth in this Affidavit, arise from the following: (a) my own involvement in prior drug investigations and searches during my career as a law enforcement officer, as previously described in the training and qualifications portion of this affidavit; (b) my involvement on a number of occasions in debriefing confidential informants and cooperating individuals in prior drug investigations, as well as what other agents and police officers have advised me when relating the substance of their similar debriefings and the results of their own drug investigations, more particularly described below; (c) from this particular investigation and other investigations involving the interception of wire communications pursuant to a court authorized Title III wiretap.

## B. THIS INVESTIGATION

8. I have personally participated in the investigation of

4

the subjects identified in this Affidavit since September 2004. I am familiar with the facts and circumstances of this investigation from oral and written reports made to me by other Agents of the DEA, other federal, state and local law enforcement agencies, oral and written reports of conversations and meetings with numerous confidential sources, a review of consensually recorded conversations, and a review of wire intercepted conversations as well as my own personal participation in the investigation which includes surveillance and independent investigation.

9. I am submitting this affidavit for three reasons: (A) in support of a criminal complaint charging (1) ALBERTO Q. ROMERO, a/k/a "Loco," (2) JORGE A. ROMERO; (3) JOSÉ M. GONZALEZ-PADILLA; and (4) FNU LNU, a/k/a "Willie," (hereinafter the "Target Subjects") with conspiracy to distribute five kilograms or more of cocaine, a Scheduled II controlled substance and in violation of Title 21, United States Code, Sections 846, 841(a)(1), and (b)(1)(A)(ii); (B) in support of an application for the issuance of two (2) Search Warrants to be executed at the Target Locations referred to below and as further described in **Attachments A and B**; and (C) and in support of a seizure warrant for a 2000 red Bentley Arnage, registered to Phadungthia Piyagon, bearing MA registration plates 22EZ04, which is further described in **Attachment C**.

10. This affidavit includes a summary of events that I am personally familiar with as well as the observations and knowledge related to me by other DEA agents Boston Police Department Officers

5

and Detectives and other law enforcement personnel who have been working on this investigation. This affidavit does not set forth all the facts developed during the course of this investigation. Rather, it sets forth only those facts that are necessary and sufficient to establish probable cause to believe that the Target Subjects have committed the above described controlled substance violations, and that the aforementioned two (2) locations contain evidence, proceeds, and contraband relating to the possession, distribution, and trafficking of cocaine and other evidence tending to prove that the aforementioned target subjects have violated 21 U.S.C. §846.

## 1. Overview of Case

11. Beginning in approximately September 2004, the DEA in Boston, MA and the Boston Police Department (BPD) began an investigation into the drug trafficking activities of Husie Joyner, a/k/a "Poopie." Further details concerning the factual background and progress of this investigation are set forth in more detail in my affidavit of July 22, 2005 and is incorporated herein by reference.

## 2. The Title III Wiretaps

12. Between April 19, 2005 and July 14, 2005, the DEA obtained Title III wiretaps on nine different cell phones used by Targets of investigation. On April 19, 2005, U.S. District Judge George A. O'Toole, Jr. for the District of Massachusetts signed an order authorizing the interception of wire communications to and from the cellular telephone number used by Husie A. Joyner,

assigned call number **(617) 388-8691,** bearing Electronic Serial Number ("ESN") 2D011AAB, and subscribed to in the name of Nigel Seale, 49 Woodruff Way, Mattapan, MA (the **"Joyner Target Telephone"**); and the cellular telephone used by GREGORY R. BING, assigned call number **(617) 970-4622,** bearing ESN 2D4741D2, and subscribed to in the name of Katrina Matthews, 40 Vallor Road, East Boston, MA, (the **"Bing Target Telephone"**). On May 20, 2005, Judge O'Toole signed an order authorizing a thirty day extension of interception of wire communications to and from the same target telephones. On June 19, 2005, DEA discontinued the interception of wire communications over telephone number **(617) 388-8691,** the Joyner Target Telephone, pursuant to the court's order. On June 2, 2005, DEA discontinued the interception of wire communications over telephone number **(617) 970-4622,** the Bing Target Telephone.

13.  On May 11, 2005, U.S. District Judge George A. O'Toole, Jr. for the District of Massachusetts signed an order authorizing the interception of wire communications to and from the cellular telephone number used by Husie A. Joyner, assigned call number assigned call number **(617) 642-0420,** which is a Pre-Paid T-Mobile cellular telephone bearing IMSI number 310260401932303, with no subscriber information provided ("Joyner Target Telephone #2"). The interception of wire interceptions over Joyner Target Telephone was discontinued on June 9, 2005.

14.  On May 25, 2005, U.S. District Judge George A. O'Toole, Jr. for the District of Massachusetts signed an order authorizing the interception of wire communications to and from the cellular

telephone number used by "WILLIE" assigned call number **(617) 938-9754,** which is a Pre-Paid T-Mobile cellular telephone bearing IMSI number 310260401932303, subscribed to Inocente Quijada with no further subscriber information provided (the **"Quijada Target Telephone"**). The interception of wire communications over the Quijada Target Telephone were discontinued on June 1, 2005.

15. On June 16, 2005, U.S. District Rya W. Zobel for the District of Massachusetts (acting in lieu of Judge George A. O'Toole, Jr.) signed an order authorizing the interception of wire and electronic communications to and from telephone number **(857) 492-1386** (**Bing Target Telephone #2** used by GREGORY BING) and telephone number **(857) 492-1070** (**Joyner Target Telephone #3** used by Husie Joyner). On July 14, 2005, Judge O'Toole signed an order authorizing a thirty day extension of interception of wire communications to and from Joyner Target Telephone #3. The interception of wire communications over Bing Target Telephone #2 were discontinued on July 15, 2005 pursuant to the Court's June 16, 2005 order. On July 22, 2005, the interception of wire communications over Joyner Target Telephone #2 were discontinued due to the arrest of target subjects GREGORY BING, ANTHONY SMITH, GERARD KIMBLE, and DONNELLE JOYNER.

16. On July 8, 2005, U.S. District Judge George A. O'Toole, Jr. for the District of Massachusetts signed an order authorizing the interception of wire communications to and from: cellular telephone number **617-406-8409,** IMSI 316010029453153 and UFMI 180*270816*7, subscribed to in the name of Alberto Romero, 68

8

Williams St., Jamaica Plain, MA used by ALBERTO ROMERO (the **"Romero Target Telephone"**); and cellular telephone number **617- 519-4782**, bearing ESN 04107826195, subscribed to Yasmil Frias, 115 Homestead St #8, Dorchester, MA, used by "WILLIE" (the "FRIAS TARGET TELEPHONE").[1] The interception of these target telephones is ongoing.

17. On July 14, 2005, U.S. District Judge George A. O'Toole, Jr. for the District of Massachusetts signed an order authorizing the interception of wire communications to and from the cellular telephone number used ANTHONY SMITH assigned call number **(617) 918- 3640**, bearing IMSI number 316010029447808 and UFMI or "direct-connect" number 180*80079*8, subscribed to Shoe Fetish, 569 Columbus Avenue, Boston, MA (hereinafter referred to as the **"Smith Target Telephone"** ). The interception of wire communications to and from the Smith Target Telephone were discontinued on July 22, 2005 due to the arrest of ANTHONY SMITH.

18. In the paragraphs below, I have set forth a brief summary of a number of the relevant intercepted telephone calls over the above described target telephones. The paragraphs below describing these intercepted calls are only summaries and for the most part

---

[1]In my July 8, 2005 wiretap affidavit for the Romero and Frias Target Telephones, I identified the user of the Frias Target Telephone as being JORGE Romero and indicated that JORGE Romero and "WILLIE" were the same individual. However, once the interceptions of wire communications began, it quickly became apparent that the user of Frias Target Telephone was an unidentified Hispanic male referred to as "WILLIE" (the same user of the Quijada Target Telephone) and JORGE Romero was another individual, an associate and relative of Alberto Romero, using telephone number 617-504-1091, subscribed to George Santana.

are not verbatim transcripts of the complete and/or actual conversations. I have also not detailed herein all of the relevant telephone calls since there are thousands of intercepted calls. In the call summaries below, I also have included parenthetical comments relating to the conversations which contain my own and other law enforcement agents' interpretation of the coded language being used by the Target Subjects and the context of these intercepted conversations. These interpretations are based on my own experience investigating narcotics traffickers and my familiarity with the facts gathered thus far during this investigation. In addition to the intercepted phone calls, I have included information about the physical surveillance law enforcement agents have conducted of the Target Subjects in conjunction with wire interceptions and seizures of cocaine that took place during the interception of wire communications.

## C. **PROBABLE CAUSE AS TO TARGET SUBJECTS**

### ALBERTO Q. ROMERO, a/k/a "Loco"

19.  Investigators believe that ALBERTO G. ROMERO, a/k/a "Loco" (ALBERTO) is a Hispanic male from the Dominican Republic and the user of cellular telephone number 617-406-8409, which is subscribed to in the name of Alberto Romero, 68 Williams St., Jamaica Plain, MA (the Romero Target Telephone). Based on intercepted Title III intercepted conversations, ALBERTO is believed to be a source of supply of cocaine to Husie Joyner and other individuals in the Boston area.

20.  In February 2005, Husie Joyner sold ALBERTO a red 2000

10

Bentley Arnage, bearing registration plates 22EZ04. During
several intercepted conversations, Husie has talked about selling
this vehicle to ALBERTO ROMERO. For example, on April 25, 2005,
at about 8:19 p.m., Husie Joyner received an incoming call from
one of Husie's drug customers. During the call, the drug
customer said that he didn't know that Husie had sold "this car"
(a Bentley). In the background, the drug customer could be
overheard talking with an Hispanic male who I believe was ALBERTO
ROMERO. The drug customer handed his phone to ROMERO, and Husie
asked ROMERO, "why you so hard to get in contact with, dog?"
ROMERO replied, "Some sh*t came up, I had to go to Dominican
Republic . . . I just got back two days ago."[2]

## JORGE ROMERO, a/k/a George Santana

21. Investigators believe that JORGE ROMERO is the user of
telephone number 617-504-1091, a telephone subscribed to George
Santana and the brother of ALBERTO ROMERO. According to records
maintained by the Massachusetts Criminal History Systems Board
("CHSB"), JORGE ROMERO also resides at 68 Williams Street, #3,
Jamaica Plain, MA. JORGE ROMERO is believed to be the brother of
ALBERTO ROMERO.

22. Following a series of intercepted calls on July 8,
2005, where ALBERTO ROMERO directed JORGE ROMERO to deliver a
kilogram of cocaine to another individual, investigators

---

[2]According to entry records from the United States
Department of Homeland Security ("DHS"), ALBERTO ROMERO arrived
at Logan Airport from the Dominican Republic on April 19, 2005.

conducted surveillance of ALBERTO ROMERO and JORGE ROMERO as they met each other at ALBERTO's residence at 68 Williams Street in Jamaica Plain. Investigators followed JORGE ROMERO as he left 68 Williams Street in a 2000 Honda and identified JORGE ROMERO during the course of a traffic stop.

**FNU LNU, a/k/a "WILLIE,"**

23. Investigator believe that "WILLIE" is a yet to be fully identified Hispanic male who a close associate of ALBERTO ROMERO who together with ALBERTO and JOSE GONZALEZ-PADILLA supply cocaine to Husie Joyner. During the course of Title III wire interceptions, "WILLIE" was intercepted using cellular telephone numbers: **(617) 938-9754,** subscribed to Inocente Quijada; and **617-519-4782,** subscribed to Yasmil Frias.

24. On July 13, 2005, agents set up surveillance at a garage located at 109 Norfolk Street, a 4 bay garage owned by Edward Suarez. During several intercepted calls, "WILLIE" indicated that he was at this garage at 109 Norfolk Street. While these calls were being intercepted, agents observed "WILLIE" using the Frias Target Telephone. Agents also conducted videotape surveillance of "WILLIE" at this location. Thereafter, agents attempted to follow "WILLIE" as he departed the area, but had to discontinue the surveillance due to counter-surveillance maneuvers by "WILLIE." The next day, "WILLIE" told ALBERTO ROMERO that the police followed him hard the night before.

**JOSE M. GONZALEZ-PADILLA**

12

24. Investigators believe that GONZALEZ-PADILLA is a runner/worker for "WILLIE" who is responsible for making pickups and deliveries of cocaine and drug proceeds for "WILLIE." During the course of wire interceptions, GONZALEZ-PADILLA was intercepted using telephone number (617) 331-7801, a pre-paid cell phone subscribed to Lureen Stephens. As further described below, on May 6, 2005, BPD officers seized $5,000 a short time after Husie Joyner had delivered the $5,000 to GONZALEZ for an earlier drug deal.

## 1. May 3, 2005 Drug Deal Involving Husie Joyner, "WILLIE," and JOSE GONZALEZ-PADILLA

25. During a series of intercepted calls on May 3, 2005, between the "WILLIE" and Husie Joyner, "WILLIE" arranged for his runner, JOSE GONZALEZ-PADILLA, to deliver to what is believed to have been a kilogram of cocaine to Joyner from "WILLIE." Husie Joyner and the runner first had problems communicating with each other regarding the actual location of the deal, but eventually arranged to meet on the intersection of Dudley Street and Columbia Road in Boston.

26. At 12:31 p.m., WILLIE called Husie Joyner and asked HUISE if he wanted to do "that" now. Husie said, yeah, I'm in Quincy . . come on . . . I'm right here now. WILLIE asked Husie, one time, two time, three time. Husie responded, bring it "one" time. Husie said he would call back and asked WILLIE to hurry up.

27. At 1:07 p.m., Husie Joyner called "WILLIE" and asked

13

"WILLIE" if was better for me (Husie) to meet him (referring to a runner for "WILLIE", JOSE GONZALEZ-PADILLA) up in Boston at his (Husie's) other spot. "WILLIE" said alright. Husie said he was heading there right now.

28.  At 1:51 p.m., "WILLIE" called Husie Joyner and told Husie that he (the runner) was off. Husie said he would be there in a minute. At 6:09 p.m., Husie Joyner called "WILLIE" and asked him what the f*ck was going on. "WILLIE" asked if he (the runner) was there. Husie said no. "WILLIE" said, alright . . . two minutes.

29.  At 6:16 p.m., Husie Joyner called JOSE GONZALEZ-PADILLA, "WILLIE"'s runner, at telephone number (617) 331-7801. During the call, Husie and the runner (GONZALEZ) realized that the GONZALEZ was at Joyner's residence at 428 Washington Street in Dorchester, but Husie was in Quincy. Husie told the runner if he (the runner) had a bag, his (Husie's) girl (referring Jaijuanna Harris, Husie's girlfriend who lives at 428 Washington Street in Dorchester) could put it in the house for you. The runner (who spoke only broken English and appeared to have trouble understanding Husie) said he would wait for Husie at Washington Street.

30.  At 6:19 p.m., "WILLIE" called Husie Joyner and asked Husie if he was not at the same place. Husie said no, he told them he was going to Quincy. Husie said that he (the runner) told him (Husie) that he (the runner) would wait for him (Husie).

14

Husie asked "WILLIE" what he ("WILLIE") wanted him (Husie) to do. Husie said he would be there (referring to 428 Washington Street) in 15 minutes.

31.  At approximately 6:59 p.m., surveillance observed BING and Husie Joyner arrive at 428 Washington Street in Dorchester (the primary residence of Jaijuanna Harris, Husie Joyner's girlfriend) in a 2005 Grey Acura sedan bearing license plate number RS95CE, registered to Jaijuanna Harris, 428 Washington Street, Dorchester.[3]   BPD Officer Feeney observed BING, carrying a garbage bag, and Husie, carrying a knapsack, get out of the Acura and enter 428 Washington Street. At around 7:03 p.m., surveillance observed BING exit 428 Washington Street, get into the Acura and leave the area. At around 7:09 p.m., surveillance observed a tall, balding Hispanic male (later identified as GONZALEZ-PADILLA) walk up to and enter 428 Washington Street. Minutes later, at around 7:12 p.m., the Hispanic male exited 428 Washington Street with what appeared to be the same knapsack that Husie Joyner brought into the residence a short time before. Surveillance then observed the Hispanic male walk toward School Street and get into a dark Green Lexus, bearing MA registration tags 46E-T12, and drive off.

## 2.  Second Drug Deal on May 4, 2005 Between Husie Joyner and

---

[3]Law enforcement officers from the BPD have observed Husie Joyner and BING operating this same grey Acura on numerous occasions.  In 2005, a Global Positions Satellite (GPS) tracking device was covertly installed on the 2005 grey Acura pursuant to a court order signed by a U.S. Magistrate in the District of Massachusetts.

15

**JOSE GONZALEZ-PADILLA**

32. During a series of intercepted calls early the next morning, on May 4, 2005, Husie and runner arranged to meet at Dudley Street and Columbia Road. During these calls, the runner (GONZALEZ-PADILLA) apparently understood only a small amount of English had trouble understanding Husie's directions. Husie and the runner eventually indicate that they see each other during an intercepted call at 1:02 a.m. and Husie told the runner to follow him.

33. At around 1:00 a.m., BPD Sgt. Det. Garvey spotted the same dark Green Lexus observed earlier the previous day (MA reg. 46E-T12) driving on Dudley Street towards Columbia Road. Shortly thereafter, at approximately 1:07 a.m., BPD Det. Wright and DEA SA Crowley spotted the grey Acura on Stoughton Street and observed the Acura make a U-turn and head in the direction of Columbia Road. After this, BPD Sgt. Det. Garvey observed both the grey Acura and the dark Green Lexus positioned behind him at the red traffic light at the intersection of Stoughton Street and Columbia Road. After the light turned green, Sgt. Det. Garvey observed the Acura and Lexus make a left turn onto Columbia Road. SA Crowley and Sgt. Det. Garvey then observed both the Acura and Lexus park on Bird Street. The passenger of the Acura, a heavy set black male with a goatee believed to have been Husie Joyner, exited the Acura and got into the Lexus. The Lexus then drove a short distance just beyond the corner of Bird Street and Columbia Road. After this, the passenger of the Acura got out of the

16

Lexus, walked a few hundred feet back to the Acura and got back in the Acura.

## 3. May 6, 2005: Husie Joyner Delivers $5,000 to JOSE GONZALEZ-PADILLA

34.   On May 6, 2005, at about 1:23 p.m., HUSIE JOYNER received an incoming call over the Joyner Target Telephone from"WILLIE", who was calling from the FRIAS TARGET TELEPHONE. HUSIE asked "WILLIE" where he was and then told "WILLIE" to meet him (HUSIE) on Washington Street (believed to be 428 Washington Street, 2nd Floor Apartment, Dorchester, MA, the primary residence of Jaijuanna Harris, Husie Joyner's girlfriend). At 1:48 p.m., Husie Joyner called "WILLIE" and asked him, 'Where you at, dog man, I'm in my car just waiting for you, where you at  .
. . yo man how long will it take all around, cause I got something to do, man.' WILLIE responded that he would be there in couple of minutes.

35.   On May 6, 2005, at about 1:59 p.m., shortly after he met with JORGE ROMERO, HUSIE called GREGORY BING and asked BING if he was at the (stash) house yet.  BING said he was getting ready to call HUSIE and then asked HUSIE, "We straight with what you say?"  HUSIE responded, "Three of 'em, come cn" (referring to a quantity of drugs that HUSIE just got from JORGE ROMERO). HUSIE JOYNER called BING a few minutes later to make sure he was there.

36.   At 2:09 p.m., Husie Joyner received an incoming call from "WILLIE" who told HUISE that "he" ("WILLIE's" runner, later identified as JOSE GONZALEZ-PADILLA) was on his way.  HUSIE told

17

WILLIE, "Tell him I can't sit around with this in my pocket riding around the neighborhood. What the f*ck man. Tell him to hurry up man I'm right down here by Shawmut." (believed to be 751 Shawmut Avenue, Apt # 715, Roxbury, MA, Greg Bing's primary residence).

37. On May 6, 2005, at 2:15 p.m., Husie Joyner received an incoming call from the runner (GONZALEZ-PADILLA) during which Husie and the runner arranged to meet. The runner told Husie that he was on Shawmut Avenue (believed to be in the proximity of 751 Shawmut Avenue, Apt # 715, Roxbury, MA, Gregory Bing's primary residence). Husie said that he would be right there.

38. At approximately 2:25 p.m., BPD Officer Brito observed a Hispanic male in the driver seat of the same dark green Lexus (MA. Reg. 46E-T12) parked on Shawmut Avenue in front of BING's residence at 751 Shawmut Avenue. Moments later, Officer Brito observed Husie Joyner driving the grey Acura arrive onto Shawmut Avenue from Williams Street. Husie double parked the Acura on Shawmut Avenue, got out of the driver's side leaving the door open, and entered the green Lexus through the front passenger door. Around the same time, Officer Brito observed GREGORY BING exit his residence at 751 Shawmut Avenue and enter the open door of the grey Acura. Both the Lexus and the Acura then drove a short distance and stopped on Shawmut Avenue. After a few moments, Husie got out of the Lexus and walked back to the Acura with BING still inside. Husie and BING then got out of the Acura together and entered Bing's residence at 751 Shawmut Avenue. Law

18

enforcement agents then maintained continuos surveillance of the
green Lexus until it reached Boylston Street.

39.  At approximately 2:55 p.m., BPD Officers Walsh and
McHale observed the same Lexus bearing MA registration 46E-T12
fail to stop for a pedestrian at a crosswalk in the area of
Bolyston and Hemenway Street in Boston.  Officers pulled over the
black Lexus and identified the driver and sole occupant as JOSE
M. GONZALEZ-PADILLA through a MA driver's license.  During the
course of the traffic stop, Officers Walsh and McHale observed a
large sum of money in plain view on the back seat of the vehicle.
Officers seized the money from the vehicle which totaled $5,000
mostly in $20 dollar dominations.  After issuing GONZALEZ-PADILLA
a traffic citation and providing a receipt for the seizure of the
$5,000, Officers permitted GONZALEZ to leave.

**4.  Intercepted Conversations Between Husie Joyner and "WILLIE"
    Regarding Seizure of $5,000 from JOSE GONZALEZ-PADILLA**

40.  On May 9, 2005, at 12:20 p.m., Husie Joyner received an
incoming call from JOSE GONZALEZ-PADILLA.  During the intercepted
call, GONZALEZ introduced himself as "WILLIE's" friend.  Husie
asked GONZALEZ if anything happened last Friday (May 6th) when
Husie saw him.  GONZALEZ laughed and said it was nothing. Then at
2:08 p.m., Husie Joyner received an incoming call from "WILLIE."
During the intercepted call, "WILLIE" told Husie that his boy
(GONZALEZ) ran a light and was stopped by the police.  Husie
asked if they (the police) f*cked with him and "WILLIE" said
yeah.  Husie said that he gave him a couple of dollars and said

19

that he (the runner, GONZALEZ-PADILLA) does not understand
English too good. Husie said that he told him (GONZALEZ) to
come down there by Shawmut, he didn't understand. Husie said
that the runner told him to come by BING's (751 Shawmut Avenue)
and he (Husie) jumped in the car with him. Husie asked if they
took the little change that he gave the runner and "WILLIE" said
that they did. Husie asked "WILLIE" why the took it because it
was only $5,000. For the next several minutes, Husie and
"WILLIE" talked about the traffic stop and Husie complained that
the runner does not understand English well enough.

41. During the early afternoon of May 13, 2005, JOSE
GONZALEZ-PADILLA and a Hispanic female who identified herself as
Maria Luna collected the $5,000 from Boston Police Headquarters.
As part of the claim, Luna stated that the seized money was
proceeds from a business in Worcester, MA known as Telecom Beeper
Repair. Luna provided an address of 530 VFW parkway, #202, West
Roxbury, MA as her personal residence. The same day at 8:13
p.m., Husie Joyner received an incoming call from "WILLIE."
Husie asked "WILLIE" what was up with your boy (the runner,
GONZALEZ). "WILLIE" said he got "it" back (the $5,000). Husie
said it was real hot and "WILLIE" agreed. Husie said he would
give him a call later this week.

42. On May 14, 2005, at about 3:57 a.m., HUSIE JOYNER
received an incoming call from an Hispanic male whom I believe
was ALBERTO ROMERO. ROMERO called from telephone number 617-719-
2843, a telephone which it appeared ROMERO borrowed from someone

20

else to use to call JOYNER.[4]  During the intercepted call, JOYNER
asked ALBERTO ROMERO, "When you fat ass gonna call me man. I was
going to leave a note on the car."  JOYNER stated that he was
going to leave a note (on the red Bentley that Joyner sold to
Alberto) because he didn't want to disturb him (ALBERTO).
ALBERTO said that he was going to walk up (to JOYNER's mother's
residence, 49 Woodruff Way, Mattapan, MA) to talk with JOYNER.
JOYNER told ALBERTO to walk up.  The same day, that afternoon at
1:07 p.m. on May 14, 2005, HUSIE JOYNER called Gregory Bing.  At
the beginning of the call, JOYNER told BING that he was out with
"his man" (ALBERTO ROMERO) until 5:30 a.m. because he (ALBERTO)
had the Bentley.  JOYNER said that "he" (ALBERTO) said that he
(ALBERTO) sent a lawyer to get the money (the $5,000 that was
seized on May 6, 2005) because "the dude" (GONZALEZ-PADILLA)
didn't speak English.  JOYNER further said JOYNER and ALBERTO
talked about a case ALBERTO had involving the Boston Police and a
"four kilo deal."

    43.  I believe the "four kilo deal" refers to ALBERTO
ROMERO's arrest by BPD on February 9, 2004.  On that day,

---

[4] On May 17, 2005, at 4:46 p.m., HUSIE JOYNER called this
same number, 617-719-2843, from Joyner Target Telephone #2.  An
unidentified Hispanic male (UM), who was not ALBERTO ROMERO,
answered the phone.  JOYNER asked the UM where "he" was at.  The
UM began to say, "he's not . . . " and then JOYNER interrupted
and said that he (ALBERTO) just called you from the phone that
night.  The UM responded, "yeah, yeah, yeah."  JOYNER said that
he would not call there anymore and would see him (ALBERTO) when
he goes by the store (believed to be Easy Wheels/J&D Auto/Romero
Auto Sales).

21

February 9, 2004, at around 3:54 p.m., BPD officers went to the area of Blackwood Street and Botolph Street in Boston in response to an anonymous caller about a male with a gun. When officers arrived to this area, they observed a male matching the description of the male with gun given by the anonymous caller and detained a heavy-set, dark skinned Hispanic male who was identified as ALBERTO Q. ROMERO. During a pat down search for weapons, one of the officers felt a large flat object about two inches thick inside the left arm of ROMERO's jacket. The officer seized the object which was then found to be a kilogram of cocaine wrapped in green cellophane. At about 12:45 a.m. on February 10, 2004, BPD officers executed a state search warrant on a 2001 Volvo (MA Reg. 74D-P40) which ROMERO was observed driving shortly before his arrest. Inside the trunk of the Volvo, officers found three more kilograms of cocaine wrapped in green cellophane similar to the kilogram seized from ROMERO's jacket the day before. Officers also found personal papers in the name of ALBERTO ROMERO and photos of ALBERTO ROMERO in the vehicle. ALBERTO ROMERO was subsequently charged in Suffolk Superior Court with distribution of cocaine over 200 grams.[5]

44. On May 16, 2005, at 4:50 p.m., HUSIE JOYNER made an outgoing call over Joyner Target Telephone #2 to "WILLIE" on the

---

[5] ROMERO filed a motion to suppress and the court suppressed the drugs found during the Terry stop. The case against ROMERO was subsequently nol prossed. Accordingly, I am not relying upon the evidence of this seizure for probable cause for this criminal complaint.

Quijada Target Telephone. During the intercepted call, HUSIE informed WILLIE that he would sell his grey 205 Acura because of what happened (i.e., what happened on May 6, 2005, with the seizure of $5,000). WILLIE said that his boy (GONZALEZ-PADILLA) was going to change his car too (the green Lexus). Days after this intercepted call, agents observed a grey 2005 Acura, bearing MA Registration 84YA44 parked outside of what is believed to be GONZALEZ-PADILLA's residence, 530 VFW parkway, #202, West Roxbury, MA (the same address that Maria Luna provided when Luna and GONZALEZ-PADILLA went to BPD Headquarters regarding the $5,000). According to MA RMV records, JOSE M. GONZALEZ-PADILLA purchased the 2002 Acura on May 11, 2005 and registered the vehicle effective May 13, 2005.

45. On July 10, 2005, at 4:10 p.m., "WILLIE" received an incoming call over the FRIAS TT from an who is believed to be have been JOSE GONZALEZ-PADILLA, "WILLIE's" runner, who was calling from 617-388-3341, subscribed to Maria Luna, 25 St Rose St Apt, Jamaica Plan, MA. WILLIE at first thought it is a girl calling, but when he heard GONZALEZ's voice he told GONZALEZ that he had not heard from GONZALEZ for a while. GONZALEZ said he didn't have a phone and needed to add minutes to it (to the prepaid phone). GONZALEZ said he was going over "there" today or tomorrow. WILLIE asked GONZALEZ if he went to the place where he needed to go. GONZALEZ replied yes but that they gave him an appointment for next Tuesday. GONZALEZ said he was waiting for an attorney. Later on, WILLIE asked if they (the police) bothered

him (GONZALEZ) again. GONZALEZ replied no, that he does not go out and that he just left the car somewhere, in New Jersey. GONZALEZ stated that he was going to bring it (the car) back when he comes back. WILLIE said that GONZALEZ would have to wait a little bit until things get calm.

## 5.   Intercepted Calls Involving Husie Joyner, "WILLIE," and ALBERTO ROMERO

46.   On May 23, 2005, at 1:58 p.m., Husie Joyner received an incoming call from "WILLIE" who asked Husie if he was good (if he had cocaine). Husie responded, 'Hell No, I'm not. . . I was gonna call you to say. . . ' (to ask for more cocaine). "WILLIE" said, that he had very good news (that he had cocaine). Husie said, 'Alright perfect.' "WILLIE" asked if he (Husie) wanted to do it tonight. Husie said yeah. "WILLIE" said, 'alright, I'm going to call you.' During the day on May 23, 2005, there were a series of intercepted calls with customers wanting to obtain drugs from Husie Joyner where Husie indicated to the customers that he would soon receive a supply of drugs.

47.   On May 31, 2005, at 3:00 a.m., "WILLIE" made an outgoing call over the Quijada Target Telephone to "Loco" (who is believed to be ALBERTO ROMERO) (the telephone number to which JORGE ROMERO placed the call did not register). "WILLIE" left a voice-mail message for "Loco" saying, "Loco, let me know. I have a . . . white one done . . . Loco, where are you? Are you at the beach?" (A white one is believed to be a quantity of cocaine which WILLIE has "re-rocked" or processed for re-distribution).

24

48. Later that day, May 31, 2005, at 1:34 p.m.,"WILLIE"
received an incoming call over the Quijada Target Telephone from
an Hispanic male who is believed to be ALBERTO Q. ROMERO, a/k/a
"Loco", at telephone number 617-406-8409, subscribed to Alberto
Romero, 68 Williams St., Jamaica Plain, MA (the Romero Target
Telephone). During the first part of the conversation "WILLIE"
and ALBERTO engaged in social conversation. Later in the
conversation, Alberto then said that he had offered "that" to him
and "he" was going to take it but "he" had to take care of some
things first. WILLIE said, "he" knows they're all f*cked up."
(referring to the quality of the cocaine). Alberto replied, "No
they are . . . new ones . . . they're making new ones." WILLIE
said, ". . . 22?" "Loco" replied, "Yeah 22, that's part of the
money . . . we have to do it." (referring to $22,000 for one
kilogram of cocaine).

## 6. June 1, 2005: "WILLIE" Delivers Drugs to an Unidentified Hispanic Male

49. During a series of intercepted calls on June 1, 2005,
"WILLIE" arranged to meet an unidentified Hispanic male (UM) to
deliver an unknown quantity of cocaine to the UM. First, at
11:40 a.m., "WILLIE" received an incoming call over the Quijada
Target Telephone from the UM who was calling from 978-973-8043,
subscribed to Jose Carrasquillo, 142 Franklin St., Haverhill, MA.
The UM referred to "WILLIE" as "Pesao." "WILLIE" told the UM
that he was going to be at Naverrete Restaurant on Columbia Road.
The UM said it was a "hot" area, but "WILLIE" told the UM to meet
him there. Then, at 12:18 p.m., the UM called "WILLIE" at the

25

Quijada Target Telephone to get further directions to the restaurant. The UM asked if "WILLIE" had to go with the "*poderes*" (Spanish for "powers"). "WILLIE" said yes and stated that they would have to go to the car together. After these calls, agents conducting surveillance outside Naverrete restaurant on Colombia Road observed an Hispanic male believed to be "WILLIE" walk out of the restaurant, meet with an unidentified Hispanic male (believed to be the user of telephone number 978-973-8043). Thereafter, agents observed "WILLIE" get into the 2002 grey Acura 35-RL, bearing license plate 84YA44, and which was registered to Jose M. Gonzalez-Padilla, 568 Bluehill Avenue Apt. R1, Dorchester, MA.

50. At 2:01 p.m., "WILLIE" made an outgoing call over the Quijada Target Telephone to the same UM at 978-973-8043. "WILLIE" asked the UM, "So how is that guy? Alright?" (Referring to the drugs that "WILLIE" just supplied the UM). The UM responded, "well . . . nothing to say . . . You know. What about you, did you check already?" (Referring to the money that the UM just gave to WILLIE). "WILLIE" replied, "Nope. We'll talk later."[6]

_____

[6]The last intercepted call of "WILLIE" on the Quijada Target Telephone was on June 1, 2005, at about midday. The next day, June 2, 2005, there were no calls intercepted on the Quijada Target Telephone until that evening. During the day, agents contacted a T-Mobile representative who said the cell phone was being used in the New York/New Jersey area and activated the phone in that area. Afterwards, agents began intercepting calls and determined that the individual now using the Quijada Target Telephone was not "WILLIE"; during one intercepted call, for example, the person using the telephone indicated that he found

26

## 7.   July 8, 2005 Intercepted Calls Between ALBERTO ROMERO and JORGE ROMERO

51.   On July 8, 2005, at 8:45 p.m., ALBERTO ROMERO made an outgoing call over the ROMERO TT to JORGE ROMERO at 617-504-1091, a telephone subscribed to George Santana.  ALBERTO asked JORGE if he met with the "dude" today and JORGE said that he did.  ALBERTO asked JORGE if he wanted to get rid of "one of them" right away (believed to be a kilogram of cocaine).  JORGE said that he did and asked ALBERTO how he wanted to do it.  ALBERTO told JORGE to go to the basement where they did it last time.  ALBERTO told JORGE "23 bucks" ($23,000 price of the one kilogram) and said he had to make a call to make sure.

52.   At 8:49 p.m., ALBERTO ROMERO made an outgoing call over the ROMERO TT to JORGE ROMERO at 617-504-1091, a telephone subscribed to George Santana.  ALBERTO told JORGE that "the guy" can't go to the place because it is rented out.  ALBERTO said that either "the guy" can go to JORGE's or to ALBERTO's house (at 68 Williams Street, Third Floor, Jamaica Plain).  JORGE said it didn't matter.  ALBERTO said that the best bet is over towards ALBERTO's place (68 Williams Street).  ALBERTO said that when the guy comes he (ALBERTO) can go with the guy over "there."  JORGE agreed.  ALBERTO asked if the guy should go upstairs or what. JORGE said the guy does not have to, but then told ALBERTO to go up stairs with the guy.  ALBERTO replied he will call JORGE so

---

the chip along the highway.  There was still $246 of minutes left on the pre-paid, Quijada Target Telephone when it was apparently abandoned by "WILLIE".

JORGE can go downstairs. ALBERTO said he was going to stay there and someone would have to take him (ALBERTO) back home because he could not stay. JORGE asks who. ALBERTO repeated somebody maybe "Madeline." JORGE told ALBERTO to stay where he was and then just send "the guy." ALBERTO replied that "the guy" will get lost. JORGE told ALBERTO to do what ever he wants.

53.    On July 8, 2005, at 9:02 p.m., ALBERTO ROMERO received an incoming call over the ROMERO TT from JORGE ROMERO who was calling from 617-504-1091. JORGE asked if ALBERTO is going to take a long time. JORGE said he would go out because he had to go out. ALBERTO said it was best that way. JORGE asked ALBERTO if he was going to go downstairs or what. ALBERTO said he could. JORGE said that he will call him (ALBERTO) when he gets there (ALBERTO'S residence at 68 Williams Street).

54.    On July 8, 2005, at 9:12 p.m., ALBERTO ROMERO received an incoming call over the ROMERO TT from JORGE ROMERO who was calling from 617-504-1091. JORGE asked ALBERTO where ALBERTO wanted him to go . ALBERTO said that he was home (68 Williams Street). JORGE asked if "it" (the cocaine) was where he keeps his (ALBERTO's) dog. ALBERTO agreed and JORGE said alright.

55.    After this series of intercepted calls, investigators conducted surveillance outside 68 Williams Street in Jamaica Plain, ALBERTO ROMERO's residence.  Investigators observed an Hispanic male (later identified as JORGE ROMERO) meet with ALBERTO ROMERO at the front door of 68 Williams Street.  JORGE and ALBERTO went into the residence together.  A short while

later, JORGE left the residence and got into a 2000 Honda, bearing MA registration tags 45X131, registered to Madeline Teijada. Investigators followed the Honda as it drove to School Street, and then to the area of Boylston Street and Dalrymple. A while later, BPD officers conducted a traffic stop and identified the driver of the vehicle as Madeline Teijada (the registered owner of the car) and the sole passenger as JORGE A. ROMERO, the same individual who meet with ALBERTO ROMERO moments before. The address listed on the JORGE's license was 68 Williams Street, #3, Jamaica Plain, MA.

56. On July 14, 2005, at 1:36 p.m., ALBERTO ROMERO made an outgoing call over the ROMERO TT to JORGE ROMERO at 617-504-1091. During the call, JORGE ROMERO put a guy named "Jason" on the phone to talk with ALBERTO. Jason said, 'Hey! what's up friend listen, you don't know me, but my name is Jason I'm Joselito's and Nelson's cousin.' ALBERTO then asked JORGE what Jason wanted from JORGE. JORGE said that he thought Jason was going to hook up him (JORGE) with something.

## 8. Physical Surveillance of "WILLIE" and Travel to New York

57. On July 13, 2005, agents set up surveillance at a garage located at 109 Norfolk Street, a 4 bay garage owned by Edward Suarez. During several intercepted calls, "WILLIE" indicated that he was at this garage at 109 Norfolk Street. While these calls were being intercepted, agents observed "WILLIE" using the Frias Target Telephone. Agents also conducted videotape surveillance of "WILLIE" at this location. Thereafter,

agents attempted to follow "WILLIE" as he departed the area, but had to discontinue the surveillance due to counter-surveillance maneuvers by "WILLIE."

58. The next day, July 14, 2005, at 5:32 p.m., ALBERTO ROMERO received an incoming call over the ROMERO TT from "WILLIE" who was calling from telephone number 978-609-2011, subscribed to Timothy Shea. Alberto asked WILLIE, 'What happened? You haven't picked up that phone all day.' WILLIE said, 'They followed me hard last night.' After a brief pause, WILLIE asked, 'So what's up?' Alberto said, 'Nothing. This guy called me early saying your car is ready.' WILLIE said, 'let's get it.' Later in the conversation, Alberto told WILLIE that Edward called for WILLIE. Alberto told WILLIE to call someone to bring you, but WILLIE said he didn't have anyone. Alberto told WILLIE to 'Call Tonino or any of those guys who like to come over this way.' WILLIE said, 'I don't even want to turn on the phone.' A call waiting beep is heard, and Alberto said that Edward was calling him on the other line. WILLIE said, 'Let me call "Manolo" to see what is he doing. I'll call you later, dude.

59. On July 15, 2005, at 11:57 p.m., ALBERTO ROMERO received an incoming call over the ROMERO TT from an UM calling from 617-785-1350. The UM asked Alberto, 'I'm calling you man, what's up Loco calling you, is it true that Willin (WILLIE)....' Alberto asked, 'What happened to WILLIE.' The UM said, 'No, they just asked me "Is it true that WILLIE, is he okay . . . and I was like, how is that possible?' The UM said it happened today when

30

WILLIE arrived with the Pinto. Alberto asked, 'To WILLIE! My
WILLIE?' Alberto then said, 'Well man I don't know. There have
been some weird moves, but I haven't been aware of that yet,
because that guy man, has telephones that you can never call or
anything.' In call no. 696 early at 12:00 a.m., UM and Alberto
continued the same conversation about WILLIE. Alberto told UM
that he didn't know anything about it, that he could not get a
hold of him (WILLIE) over the phone. Alberto stated that some
weird things happened yesterday, so he doesn't know. UM stated
that "Bebo" called him asking if it was true. Alberto said that
he'll try to find out and if he does, he'll give UM a call. UM
stated that there is no problem. Alberto told him to give Alberto
a call if he found out anything.

60.  On July 17, 2005, at 6:21 p.m., ALBERTO ROMERO made an
outgoing call over the ROMERO TT to "David" at 699-8629,
subscribed to Adriano Cordero, 74 Medford St., Apt. 697,
Charlestown, MA. Alberto asked David for WILLIE's number. David
said it had been three days since he spoke with him. David said
he is up by the city there (New York). David then gave Alberto
two phone numbers for WILLIE, 857-919-0710 and 617-519-4782
(which is the FRIAS TT). Alberto said that neither of those two
numbers were working. Alberto then asked if "Joanne's" number
works and David said yes.

61.  On July 17, 2005, at 6:24 p.m., ALBERTO ROMERO made an
outgoing call to 857-919-0710, subscribed to Maria Abreu. A UM
answered the phone and Alberto asked if he knew where WILLIE was.

31

The UM said he was there with him and put WILLIE on the phone. Alberto told WILLIE, 'Listen, call Amaury, TOMÁS and those guys, they are spreading out that you got arrested, dude. I got already like 7 calls from everywhere, and is from a very reliable source that you are for sure arrested.'  WILLIE said he would call them.

## C.   TARGET LOCATIONS

### 1.   68 Williams Street, Third Floor and Basement, Jamaica Plain, MA (Residence of ALBERTO ROMERO and stash location)

#### A.   Description of Premises (Attachment A)

62.   The residence known as 68 Williams Street, Third Floor, Jamaica Plain, MA is purple three family house with white trim. The number 68 appears to the door above the door frame.   There is a front porch purple in color with white trim.   There are three mail boxes for each of the three apartments number 1, 2, and 3. There are also windows near the ground level for the basement. There is a paved driveway to the left of the building.

#### B.   Link to Target Subjects

63.   Investigators believe that 68 Williams Street, Third Floor, Jamaica Plain, MA is the residence of ALBERTO Q. ROMERO which he uses to store cocaine, drug proceeds, and other evidence concerning the sale and distribution of cocaine, for the following reasons: (1) According to MA RMV records, both ALBERTO ROMERO and his brother JORGE A. ROMERO reside at 68 Williams Street, #3, Jamaica Plain, MA. (2) ALBERTO ROMERO's cellular telephone, 617-406-8409, was the subject of a Title III wiretap. This cell phone, which was referred to as the Romero Target Telephone, was subscribed to in the name of Alberto Romero, at the subject property 68 Williams St., Jamaica Plain, MA.   (3) Upon arrest on February 9, 2005 by BPD, ALBERTO ROMERO provided an address of 68 Williams Street, Jamaica Plain, MA.   (4) During intercepted Title III calls on the Romero Target Telephone,

33

ALBERTO ROMERO has directed JORGE ROMERO to pick up cocaine at the subject location and has directed customers to deliver money to the subject location. For example, during a series of intercepted calls on July 8, 2005, ALBERTO asked JORGE if he wanted to get rid of one and said the price was 23 bucks (which is believed to be one kilogram of cocaine for $23,000). ALBERTO told JORGE to go to the basement where they did it last time. At 8:49 p.m., JORGE called ALBERTO back and told him that "the guy" (the drug customer) could not do it (the drug deal) and other place because it was rented out. ALBERTO told JORGE it was best to do it at his place. (5) During this same series of calls on July 8, 2005, ALBERTO and JORGE also talked about getting the cocaine out of the basement. For example, during the call at 8:49 p.m., ALBERTO and JORGE talked about whether "the guy" could go upstairs (to the third floor apartment) or downstairs (to the basement). In particular, ALBERTO asked JORGE if "the guy" should go upstairs or what. JORGE said the guy does not have to, but then told ALBERTO to go up stairs with the guy. ALBERTO replied he will call JORGE so JORGE can go downstairs. During an intercepted call at 9:02 p.m., JORGE again asked ALBERTO if he was going to go downstairs or what. ALBERTO said he could. JORGE said that he will call him (ALBERTO) when he gets there (68 Williams Street). (6) During a series of intercepted calls on July 16, 2005, an unidentified male made arrangements to give "shirt" (believed to be drug proceeds) to ALBERTO ROMERO at his residence. In particular, on July 16, 2005, at 9:41 p.m.,a UM

34

called the ROMERO TT and left a voice mail message saying, 'Hey this is Rich, haller back when you get this message, I'm in Rosindale right now, Now I'm heading down towards Dorchester, Later.... I got the shirts on me.' During an intercepted call at at 9:56 p.m., ALBERTO ROMERO and the UM agree to meet at ALBERTO's residence and told the UM that his address was "68 Williams Street." Then in an intercepted call at 10:04 p.m., ALBERTO told the UM that he was on the third floor and he would throw the UM his keys to get in the front door. (7) During a series of intercepted calls on July 17, 2005, ALBERTO ROMERO spoke with an UM (Andre) who wanted to deliver money to WILLIE, but since WILLIE was in New York, ALBERTO directed the UM to deliver the money to 68 Williams Street. In particular, on July 17, 2005, at 6:15 p.m., ALBERTO ROMERO received an incoming call over the ROMERO TT from "Andre" who was calling from 617-892-2741, subscribed to Glendaliz Rodriguez. Andre told Alberto, 'Dude, I got a message saying some rumors and shit, I have some money for this guy (WILLIE) and I don't know whom to give them to. At 7:31 p.m., ROMERO called Andre at the same number and told Andre that he already spoke with WILLIE. Andre said,'I was going to drive by to give you that money, I got that sh*t on me.' Alberto then gives Andre directions again to his location at 68 Williams Street and states that it is the last house on the left.

**2.    A Tan Trailer located at Romero Auto Sales/Easy Wheels, 852 Blue Hill Avenue, Dorchester, MA 02124**

**A.    Description of Premises (Attachment B).**

64.    Romero Auto Sales/Easy Wheels is business with a paved lot that can hold about seventeen cars.  The lot is enclosed with a chain link fence on the front, the left, and right side of the property.  The only structure on the property is a trailer, tan in color, with a sign with the name "Easy Wheels" in red and the number "852."  The trailer abuts a white brick building with encloses the rear of the property.

**B.    Link to Target Subjects**

65.    Investigators believe that Romero Auto Sales, also known as Easy Wheels, is a auto sales business which is used by ALBERT ROMERO to commit violations of 21 U.S.C. Sec. 1957, that is money transactions involving more than $10,000 in proceeds knowingly derived from drug trafficking.  As further described above, in February 2005, ALBERTO ROMERO purchased a red 2000 Bentley Arnage from Husie Joyner.  According to the transaction documents, ALBERTO ROMERO then sold the vehicle to Nelson Lirano for $70,000.  After this alleged transaction, however, based on surveillance and Title III calls, ALBERTO never transferred possession or ownership of this vehicle.  Accordingly, agents believe that there is probable cause that there is documentary evidence relating to this transaction present at the business for the following reasons: (1) Romero Auto Sales is incorporated as a

36

Domestic Limited Liability Company. Based on the Articles of Incorporation, the business address is 852 Blue Hill Avenue in Dorchester, MA and the listed manager is JORGE ROMERO. (2) As further described above, in February 2005, Husie Joyner sold ALBERTO a red 2000 Bentley Arnage. During several intercepted conversations, Husie has talked about selling this vehicle to ALBERTO ROMERO. For example, on April 25, 2005, at about 8:19 p.m., Husie Joyner received an incoming call from one of Husie's drug customers. During the call, the drug customer said that he didn't know that Husie had sold "this car" (a Bentley). In the background, the drug customer could be overheard talking with an Hispanic male who I believe was ALBERTO ROMERO. The drug customer handed his phone to ROMERO, and Husie asked ROMERO, "why you so hard to get in contact with, dog?" ROMERO replied, "Some sh*t came up, I had to go to Dominican Republic . . . I just got back two days ago. (3) A few weeks later, on May 21, 2005, at 12:46 a.m., during an intercepted call HUSIE JOYNER spoke with "Kev" who said that he saw the "sunfire" (the red Bentley) on Columbus Avenue. Husie said he sold it and asked if it was a Spanish guy driving it with dealer plates. ALBERTO ROMERO and JORGE ROMERO own and manage Easy Wheels/J&D Auto/Romero Auto Sales, a used car dealership, and have two dealer plates assigned to them. According to the Massachusetts RMV 1 records, the red Bentley was transferred to ALBERTO ROMERO on or about February 1, 2005. (4) Agents have conducted surveillance of ALBERTO ROMERO at his residence at 68 Williams Street, Jamaica Plain and at Romero

37

Auto Sales as 852 Bluehill Avenue in Dorchester.  Agents have observed the red Bentley parked at ALBERTO's residence and at Romero Auto Sales.  Agents have also observed ALBERTO remove dealer plates from other vehicles and then transfer those plates to the red Bentley.

## D. TARGET PROPERTY FOR SEIZURE

**3.    A red 2000 Bentley Arnage, registered to Piyagon O. Phadungthai, bearing Vehicle Identification Number (VIN) SCBLC31E6YCX04930.**

### A.    Description of Property

65.    The above listed motor vehicle is a red 2000 Bentley Arnage, registered to Piyagon O. Phadungthai, 275 Main Street, Apt. 608, Watertown, MA 02472.  The subject property bears Vehicle Identification Number (VIN) SCBLC31E6YCX04930.

### B.    Link to Target Subjects

66.    As further described above, in February 2005, Husie Joyner sold this vehicle to ALBERTO ROMERO.  ALBERTO ROMERO later indicated in the transaction documents that he sold the vehicle for $70,000, but continues to use and operate the vehicle.  I submit there is probable cause to believe this vehicle constitutes and/or is derived from drug proceeds.

39

## D.    CONCLUSION

65.    Based on the information contained in this affidavit, I submit that there is probable cause to believe that: **(A)** (1) ALBERTO Q. ROMERO, a/k/a "Loco," (2) JORGE A. ROMERO; (3) JOSÉ M. GONZALEZ-PADILLA; and (4) FNU LNU, a/k/a "Willie," (hereinafter the "Target Subjects") have committed the crime of conspiracy to distribute five kilograms or more of cocaine, a Scheduled II controlled substance and in violation of Title 21, United States Code, Sections 846, 841(a)(1), and (b)(1)(A)(ii); **(B)** there is probable cause to believe that there is evidence, contraband, fruits and instrumentalities of drug trafficking and money laundering at the two Target Locations; (C)that 2000 red Bentley Arnage, registered to Phadungthia Piyagon, bearing MA registration plates 22EZ04, which is further described in **Attachment C**, is subject to seizure under Title 21, United States Code, Section 853 and Title 18, United States Code, Section 982(a)(1).

I declare that the foregoing is true and correct.

Joao Monteiro
DEA Task Force Agent

Subscribed and sworn to
before me this 25ᴴ day of
July 2005.

UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

JS 45 (5/97) - (Revised USAO MA 6/29/04)

| **Criminal Case Cover Sheet** | **U.S. District Court - District of Massachusetts** |

**Place of Offense:** _____    **Category No.** _I_____    **Investigating Agency** __DEA/BPD_____

**City** __Boston_____    **Related Case Information:**

**County** ___Suffolk_____

Superseding Ind./ Inf. _____    Case No. _____
Same Defendant _____    New _____
Magistrate Judge Case Number _____
Search Warrant Case _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name **ALBERTO O. ROMERO**_____    **Juvenile** ☐ Yes    ☒ No

Alias Name **Loco**_____

Address __68 Williams Street, #3, Jamaica Plain, MA_____

Birth date (Year only): **1976** SSN (last 4 **0478** Se **M** Race: **Hispanic** Nationalit **Dom. Rep.**

**Defense Counsel if** _____    **Address:** _____

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA** **Neil J. Gallagher**_____    **Bar Number if** _____

**Interpreter:** ☐ Yes ☒ No    List language and/or dialect: _____

**Matter to be SEALED:** ☐ Yes    ☒ No

☒ **Warrant Requested**    ☐ **Regular Process**    ☐ **In Custody**

**Location Status:**

**Arrest Date:** _____

☐ **Already in Federal Custody** _____ in _____ .
☐ **Already in State** _____    ☐ Serving Sentence    ☐ Awaiting Trial
☐ **On Pretrial**    **Ordered** _____ on _____

**Charging Document:**    ☒ **Complaint**    ☐ **Information**    ☐ **Indictment**

**Total # of Counts:**    ☐ **Petty** _____    ☐ **Misdemeano** _____    ☐ **Felony** **One**

Continue on Page 2 for Entry of U.S.C. Citations

☒    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

**Date** 7/25/05    **Signature of** _____

JS 45  (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

District Court Case Number  (To be filled in by deputy clerk): _____

Name of Defendant      **ALBERTO Q. ROMERO** _____

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  21 U.S.C. Sec. 846 | Conspiracy to Distribute Cocaine | 1 |
| Set 2 | | |
| Set 3 | | |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:**

%JS 45 (5/97) - (Revised USAO MA 6/29/04)

**Criminal Case Cover Sheet**　　　　　　　　**U.S. District Court - District of Massachusetts**

Place of Offense: _____　Category No. __I_____　Investigating Agency __DEA/BPD_____

City __Boston_____　**Related Case Information:**

County　__Suffolk_____　Superseding Ind./ Inf. _____　Case No. _____
　　　　　　　　　　　　　　　Same Defendant _____　New　　_____
　　　　　　　　　　　　　　　Magistrate Judge Case Number _____
　　　　　　　　　　　　　　　Search Warrant Case　　_____
　　　　　　　　　　　　　　　R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name __JORGE A. ROMERO_____　Juvenile　☐ Yes　☒ No

Alias Name _____

Address　__68 Williams Street, #3, Jamaica Plain, MA_____

Birth date (Year only): __1980__ SSN (last 4 __5963__ Se __M__ Race: __Hispanic___ Nationalit __Dom. Rep._____

**Defense Counsel if**　　　　_____　Address: _____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____

**Bar Number:**　　_____

**U.S. Attorney Information:**

AUSA __Neil J. Gallagher_____　Bar Number if　　_____

Interpreter:　☒ Yes ☐ No　　List language and/or dialect:　__Spanish_____

Matter to be SEALED:　☐ Yes　☒ No

　　☒ Warrant Requested　　☐ Regular Process　　☐ In Custody

**Location Status:**

**Arrest Date:**　_____

☐ Already in Federal Custody　_____　in　_____ .
☐ Already in State　　　_____　☐ Serving Sentence ☐ Awaiting Trial
☐ On Pretrial　　Ordered　_____　on　_____

**Charging Document:**　☒ Complaint　　☐ Information　　☐ Indictment

**Total # of Counts:**　☐ Petty _____　☐ Misdemeano _____　☐ Felony　One_____

Continue on Page 2 for Entry of U.S.C. Citations

☒　I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
　　accurately set forth above.

**Date**　7/25/05　　　　Signature of _____

JS 45  (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

District Court Case Number  (To be filled in by deputy clerk):  _____

Name of Defendant    JORGE A. ROMERO _____

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1   21 U.S.C. Sec. 846 | Conspiracy to Distribute Cocaine | 1 |
| Set 2 | | |
| Set 3 | | |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

ADDITIONAL INFORMATION:

JS 45 (5/97) - (Revised USAO MA 6/29/04)

**Criminal Case Cover Sheet**          **U.S. District Court - District of Massachusetts**

**Place of Offense:** _____   **Category No.** _I_____   **Investigating Agency** _DEA/BPD_____

**City** __Boston_____   **Related Case Information:**

**County** ___Suffolk_____   **Superseding Ind./ Inf.** _____   **Case No.** _____
                                  **Same Defendant** _____   **New** _____
                                  **Magistrate Judge Case Number** _____
                                  **Search Warrant Case** _____
                                  **R 20/R 40 from District of** _____

**Defendant Information:**

Defendant Name __**FNU LNU**_____   **Juvenile**   ☐ **Yes**   ☒ **No**

Alias Name __**WILLIE**_____

Address _____

Birth date (Year only): _____ SSN (last 4 _____ Se _M_ Race: __Hispanic___ Nationalit __Dom. Rep._____

**Defense Counsel if** _____   **Address:** _____
                                                         _____

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA** _Neil J. Gallagher_____   **Bar Number if** _____

**Interpreter:**   ☒ **Yes** ☐ **No**   List language and/or dialect:   _Spanish_____

**Matter to be SEALED:**   ☐ **Yes**   ☒ **No**

       ☒ **Warrant Requested**   ☐ **Regular Process**   ☐ **In Custody**

**Location Status:**

**Arrest Date:** _____

☐ **Already in Federal Custody** _____ in _____ .
☐ **Already in State** _____   ☐ **Serving Sentence** ☐ **Awaiting Trial**
☐ **On Pretrial**   **Ordered** _____ **on** _____

**Charging Document:**   ☒ **Complaint**   ☐ **Information**   ☐ **Indictment**

**Total # of Counts:**   ☐ **Petty** _____   ☐ **Misdemeano** _____   ☐ **Felony** _One_____

**Continue on Page 2 for Entry of U.S.C. Citations**

☒   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
    accurately set forth above.

**Date** _7/25/05_   **Signature of** ~~Re1/81~~ _____

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number (To be filled in by deputy clerk):** _____

**Name of Defendant**    FNU LNU, a.k.a. Willie _____

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  21 U.S.C. Sec. 846 | Conspiracy to Distribute Cocaine | 1 |
| Set 2 | | |
| Set 3 | | |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:**

✎JS 45  (5/97) - (Revised USAO MA 6/29/04)

**Criminal Case Cover Sheet**                                    **U.S. District Court - District of Massachusetts**

**Place of Offense:** _____    **Category No.** _I_____    **Investigating Agency** __DEA/BPD_____

**City**  _Boston_____    **Related Case Information:**

**County**   _Suffolk_____    **Superseding Ind./ Inf.** _____  **Case No.** _____
                                     **Same Defendant** _____  **New** _____
                                     **Magistrate Judge Case Number** _____
                                     **Search Warrant Case** _____
                                     **R 20/R 40 from District of** _____

**Defendant Information:**

Defendant Name  __JOSE GONZALEZ–PADILLA_____    **Juvenile**  ☐ **Yes**    ☒ **No**

Alias Name  _____

Address   _568 Blue Hill Avenue, Dorchester, MA_____

Birth date (Year only): **1978** SSN (last 4  **9969** Se **M** Race:  **Hispanic**   Nationalit **Dom. Rep.** _____

**Defense Counsel if** _____    **Address:** _____

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA**  _Neil J. Gallagher_____    **Bar Number if** _____

**Interpreter:**    ☒ **Yes** ☐ **No**         **List language and/or dialect:**    _Spanish_____

**Matter to be SEALED:**    ☐ **Yes**    ☒ **No**

        ☒ **Warrant Requested**        ☐ **Regular Process**        ☐ **In Custody**

**Location Status:**

**Arrest Date:** _____

☐ **Already in Federal Custody** _____ **in** _____ .
☐ **Already in State** _____  ☐ **Serving Sentence** ☐ **Awaiting Trial**
☐ **On Pretrial**    **Ordered** _____ **on** _____

**Charging Document:**    ☒ **Complaint**    ☐ **Information**    ☐ **Indictment**

**Total # of Counts:**    ☐ **Petty** _____    ☐ **Misdemeano** _____    ☐ **Felony**  **One**

**Continue on Page 2 for Entry of U.S.C. Citations**

☒         **I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
           accurately set forth above.**

**Date**  _7/25/05_           **Signature of** _____

%JS 45  (5/97) - (Revised USAO MA 3/25/02)  Page 2 of 2 or Reverse

**District Court Case Number  (To be filled in by deputy clerk):** _____

**Name of Defendant     JOSE GONZALEZ-PADILLA** _____

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| **Set 1**  21 U.S.C. Sec. 846 | Conspiracy to Distribute Cocaine | 1 |
| **Set 2** | | |
| **Set 3** | | |
| **Set 4** | | |
| **Set 5** | | |
| **Set 6** | | |
| **Set 7** | | |
| **Set 8** | | |
| **Set 9** | | |
| **Set 10** | | |
| **Set 11** | | |
| **Set 12** | | |
| **Set 13** | | |
| **Set 14** | | |
| **Set 15** | | |

**ADDITIONAL INFORMATION:**